**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Lynchburg Division**

**SCEAUNCIA PARR,**
**individually and as next friend of W.C.P., a minor;**
**W.C.P., a minor,**

**Plaintiffs,**

**v.** **Case No. 6:26-cv-00095**

**LYNCHBURG CITY SCHOOL BOARD,**

**Defendant.**

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER**

NOW COME the Plaintiffs, Ms. Sceauncia Parr, individually and as next friend of her minor son W.C.P., and W.C.P., by and through counsel, and pursuant to Fed. R. Civ. P. 65 submit this Memorandum of Law in support of their Motion for a Preliminary Injunction and Temporary Restraining Order against the Defendant, Lynchburg City School Board ("the Board"), and in support state as follows:

The Board suspended W.C.P. for ninety (90) school days on a single charge—a violation of the school's cell phone policy. The General Assembly has withdrawn from every Virginia School Board the power to suspend any student for that offense. The ninety day term also doubles the forty-five day ceiling that Virginia law places on long-term suspensions, and the penalty punishes conduct with which W.C.P. was never charged and against which he had no opportunity to defend.

The Board itself readmitted W.C.P. to the school building to sit for four Advanced Placement examinations, yet its decision excludes him from every class, athletic practice, and game until December 14, 2026. Verified Compl. ¶¶ 25, 32, ECF No. 6.

Classes at E.C. Glass High School begin on August 18, 2026. The Plaintiffs ask the Court to restrain enforcement of the suspension so that W.C.P. begins his senior year in person and on time, and so that he remains in school while the Court considers the pending Motion for a Preliminary Injunction.

**STATEMENT OF FACTS**

On July 1, 2025, a new Virginia statute, Va. Code Ann. § 22.1-79.3:1 (2026), stripped every school board of the power to suspend any student for a cell phone policy violation. Ten months later, the Board suspended W.C.P. for ninety school days on that charge, and no other.

On the morning of May 5, 2026, W.C.P., an eleventh-grade student at E.C. Glass High School, participated in a private group chat with three students from another school division (Bedford County). Another participant from the other jurisdiction sent the group information about students associated with her school's boy's lacrosse program, consisting of rumors already circulating according to her. Although W.C.P. wrote the information that he received from this other person on a piece of paper and returned a photograph of such to the same private chat, he asked the participants to keep it there, shared it with no one else, and encouraged no wider distribution. He added no additional allegations, rumors, or claims. He added no additional audience. Nevertheless, the photograph reached the Bedford school community only through the act of another participant in Bedford County, who displayed it to persons outside the group. Verified Compl. ¶¶ 16-19, ECF No. 6.

On May 6, 2026, W.C.P.'s principal at E.C. Glass High School submitted a Behavior Detail Report identifying a single offense, "Possession or use of portable communication devices in violation of school policy," Virginia Department of Education behavior support offense code BSO13, and imposed a ten-day short-term suspension. On May 7, 2026, the principal issued a

Notice of Long-Term Suspension Recommendation listing the same single offense code and recommending consideration of a long-term suspension of up to 364 days and alternative placement. The Board never charged W.C.P. with any offense under the codes of student conduct adopted pursuant to Va. Code Ann. § 22.1-279.6 (2026), and it never invoked its harassment policy or any procedure requiring written notice of the specific conduct alleged. Verified Compl. ¶¶ 20-23, ECF No. 6.

A committee of the Board conducted a disciplinary hearing on the evening of May 14, 2026. By letter dated May 15, 2026, the Board advised that W.C.P. "will be suspended for 90 days and receive Home Educational Services," that he "is able to return to his base school December 14, 2026," and that the decision is "final and not appealable per policy JGD/JGE." Verified Compl. ¶¶ 24-25, ECF No. 6. The offense charged is not an offense described in Va. Code Ann. § 22.1-277.07 or § 22.1-277.08 (2026), the events involved no serious bodily injury, and no document in the record contains a finding that aggravating circumstances exist as defined by the Department of Education. W.C.P. has no prior disciplinary record. Verified Compl. ¶¶ 26-28, 33, ECF No. 6.

Although the charge itself was a content-neutral cell phone offense, the Board's documents treat the content of W.C.P.'s communications as the operative basis for the penalty. W.C.P. received notice that he was charged with a cell phone policy violation. He did not receive notice that the content of his communications would be adjudicated against him or would drive a ninety-school-day exclusion. The Notice of Long-Term Suspension Recommendation invoked the safety of an upcoming lacrosse game, but that game was canceled by forfeit, the two teams later played in the post-season without incident, and after the hearing the Board permitted W.C.P. to enter the school in person to sit final examinations, including four Advanced Placement examinations. Verified Compl. ¶¶ 29-32, ECF No. 6.

The Board's own policies mirror the statutes. Lynchburg City Schools Policy JFCM provides that "[n]o student will be suspended or expelled solely for a violation of this policy." Verified Compl. ¶ 49, ECF No. 6. The Board adopted that policy on November 11, 2025 pursuant to Va. Code Ann. § 22.1-79.3:1. Its secondary-school discipline rubric prescribes, for a first cell phone offense, a verbal warning, confiscation of the device, and a call to the parent. The rubric reaches in-school suspension only at a later offense and refers a student to the Discipline Committee only at a tenth offense, and a ninety-school-day out-of-school suspension with alternative placement appears in it for no number of offenses. W.C.P. had no prior offense. Policy JGD/JGE defines a long-term suspension as eleven to forty-five school days and permits a longer suspension only on a finding of aggravating circumstances. Verified Compl. ¶ 57, ECF No. 6.

The Plaintiffs filed this action in the Circuit Court for the City of Lynchburg on July 2, 2026, and the Board was served on July 14, 2026. The Board removed the case on August 4, 2026, and it received a ten-day extension for its responsive pleadings over the Plaintiffs' objection, moving its response deadline to August 21, 2026. ECF No. 1 ¶ 6; ECF No. 2 ¶ 7; ECF No. 5. The certified state court record was transmitted and filed on August 13, 2026. ECF No. 6. The academic year at E.C. Glass High School begins on August 18, 2026. Under the Board's decision, W.C.P. remains excluded from in-person instruction and from all extracurricular activity, including the fall athletic season, until December 14, 2026, the first semester of his senior year.

**STANDARD OF REVIEW**

A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Real Truth About Obama, Inc. v. FEC*, 575 F.3d

342, 346-47 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010), *reinstated in relevant part*, 607 F.3d 355 (4th Cir. 2010) (per curiam). The standard for a temporary restraining order is the same. *See Moore v. Kempthorne*, 464 F. Supp. 2d 519, 525 (E.D. Va. 2006). The remedy is extraordinary and requires a clear showing on each element. *Winter*, 555 U.S. at 22, 24. The Plaintiffs carry that burden on each element, Sections I through IV take the elements in turn, Section V addresses security, and Section VI addresses the timing and form of temporary relief. The Verified Complaint, ECF No. 6, sets out, under oath, the facts on which this motion rests, and the Motion is itself verified.

Preliminary relief serves to preserve the status quo, and the status quo is "the last uncontested status between the parties which preceded the controversy." *Pashby v. Delia*, 709 F.3d 307, 320 (4th Cir. 2013) (quoting *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 378 (4th Cir. 2012)). The last uncontested status between these parties preceded May 5, 2026, when W.C.P. was enrolled at E.C. Glass High School in good standing, attending classes in person, and participating in athletics. The order requested restores that status. In *Pashby*, the Fourth Circuit affirmed a preliminary injunction that reinstated benefits a state agency had already terminated, treating the injunction as one that preserved the status quo. 709 F.3d at 319-20. An order returning an enrolled student with no disciplinary record to his classroom operates the same way. Nor does interim reinstatement grant final relief. The declaration of voidness, the expungement of the record, and the damages claim all remain for judgment, and a trial on those claims loses nothing because W.C.P. sat in class while they were decided.

# ARGUMENT

## I. The Plaintiffs Are Likely to Succeed Because the Suspension Is Void Twice Over and Punishes Conduct Never Charged.

The Verified Complaint pleads four counts that rest on three independent grounds. The suspension is void because the General Assembly withdrew the power to suspend for a cell phone violation. It is void again because ninety school days doubles the statutory ceiling. And it was imposed without notice of the conduct actually punished, in violation of the Fourteenth Amendment and Article I, § 11 of the Constitution of Virginia. Any one ground entitles W.C.P. to relief, and every ground rests on undisputed documents, the Behavior Detail Report, the Notice of Long-Term Suspension Recommendation, the May 15, 2026 decision letter, and the Board's own published policies. Sections I.A and I.B present the statutory grounds, and Section I.C presents the constitutional ground. The statutory grounds afford complete relief without reaching the constitutional questions.

### A. The General Assembly withdrew the power to suspend a student for a cell phone policy violation, so the suspension is void.

The first ground rests on the statutory text alone. By a statute effective July 1, 2025, the General Assembly directed every Virginia school board to adopt a student cell phone and smart device policy and dictated the content of that policy. Each such policy shall "[e]xpressly prohibit any student from being suspended or expelled as a consequence of any violation of such policies." Va. Code Ann. § 22.1-79.3:1(B)(5). The statute then addresses the school boards themselves. "No violation of any student cell phone and smart device possession and use policy developed or implemented in accordance with subsection B shall alone constitute sufficient cause for a student's suspension or expulsion from attendance at school pursuant to § 22.1-277." Va. Code Ann. § 22.1-79.3:1(C).

The general discipline statute repeats the prohibition. Suspension requires sufficient cause, and "in no cases may sufficient cause for suspensions include . . . only a violation of any student cell phone and smart device possession and use policy developed and implemented pursuant to § 22.1-79.3:1." Va. Code Ann. § 22.1-277(A) (2026). The statute also provides that any violation that "involves, coincides with, or results in an instance of disruptive behavior" shall be addressed in accordance with the regulations on codes of student conduct adopted by each school board pursuant to subsection B of § 22.1-279.6. Va. Code Ann. § 22.1-79.3:1(C).

Disruptive behavior is itself a defined term, a violation of school board regulations governing student conduct that interrupts or obstructs the learning environment. Va. Code Ann. § 22.1-276.01 (2026). The routing provision therefore presupposes a charge under the code of student conduct, and the coincident misconduct must be charged on its own terms. Discipline ceilings of general application stand on the same footing as the statewide salary, certification, calendar, and grievance minimums that this Court has held do not invade a school board's supervisory power under Article VIII, § 7. *Dennis v. Cnty. Sch. Bd.*, 582 F. Supp. 536, 543 (W.D.Va. 1984).

The statute that confers the Board's disciplinary authority carries the same limit on its face. A school board may adopt regulations for the supervision of schools, including regulations for the proper discipline of students, only if they are "not inconsistent with state statutes." Va. Code Ann. § 22.1-78 (2026). The same chapter directs every school board to see that the school laws are properly explained, enforced, and observed, and to take care that its schools are conducted according to law. Va. Code Ann. § 22.1-79(1), (2) (2026).

The syllogism is short. The statute withdraws the power to suspend for a cell phone policy violation. The only offense charged was code BSO13, a cell phone policy violation. The Board

suspended W.C.P. for ninety school days on that charge and no other. Verified Compl. ¶¶ 20-22, 25, ECF No. 6. The suspension is an act the Board had no power to take. The Board brought no charge under § 22.1-279.6 and invoked no code of student conduct. Verified Compl. ¶ 23, ECF No. 6. The Board therefore occupied the one position the statute forecloses. It charged the content-neutral cell phone offense while punishing the content of the communications, without ever charging that content. Its own Policy JFCM, which provides that no student will be suspended or expelled solely for a violation of the cell phone policy, forbids the same result, and its published rubric prescribes a verbal warning, confiscation, and a parent call for a first offense. Verified Compl. ¶ 49, ECF No. 6.

The Supreme Court of Virginia states the limit directly. School boards hold only those powers expressly granted or necessarily implied by statute. *Sosebee v. Franklin Cnty. Sch. Bd.*, 299 Va. 17, 25 (2020). An action taken wholly outside the authority the General Assembly conferred is void, not merely voidable. *Commonwealth v. Cnty. Bd. of Arlington Cnty.*, 232 S.E.2d 30, 45 (1977). A school board that acts where a statute denies it authority produces an act that is void from inception. *Butler v. Fairfax Cnty. Sch. Bd.*, 780 S.E.2d 277, 282 (Va. 2015); *Sch. Bd. of Amherst Cnty. v. Burley*, 302 S.E.2d 53, 55 (1983). Section 22.1-79.3:1(B)(5) does not regulate how the Board exercises a disciplinary power it holds. It withdraws the power to suspend for a cell phone violation altogether. The Board's own charging documents supply every element, and the suspension is void.

Section 22.1-87 does not close that attack. It affords a thirty-day petition for review of a board's action and directs that the action be sustained unless the board exceeded its authority, acted arbitrarily or capriciously, or abused its discretion, which is review of an action the board had power to take. Va. Code Ann. § 22.1-87 (2026). A suspension imposed where the General

Assembly withdrew the power is void from inception rather than voidable, so it remains open to direct attack, and § 22.1-87 does not govern the federal claim in any event. Verified Compl. ¶ 50, ECF No. 6.

**B. Even if the Board retained power to suspend, the ninety-school-day term doubles the forty-five-school-day ceiling, so the suspension is void a second time.**

The term the Board chose is independently unlawful. A long-term suspension excludes a student for eleven to forty-five school days. Va. Code Ann. § 22.1-276.01 (2026). The suspension may extend beyond forty-five school days only within narrow limits. The statute provides as follows.

> Notwithstanding the provisions of subsections A and B, a long-term suspension may extend beyond a 45-school-day period but shall not exceed 364 calendar days if (i) the offense is one described in § 22.1-277.07 or 22.1-277.08 or involves serious bodily injury or (ii) the school board or division superintendent or his designee finds that aggravating circumstances exist, as defined by the Department. Such definition shall include a consideration of a student's disciplinary history.
>
> *See* Va. Code Ann. § 22.1-277.05(C) (2026).

The statute enumerates three predicates and permits a longer term only if one of them is present, so by the statute's own terms the forty-five-school-day ceiling governs whenever all three are absent. The enumeration is exclusive. The expression of the circumstances the General Assembly listed excludes others, a maxim the Supreme Court of Virginia has called especially applicable in the construction of statutes. *See Tate v. Ogg*, 195 S.E. 496, 499 (1938) (holding that a statute naming certain animals did not reach the fowl its enumeration omitted).

None is present here. BSO13 is neither a § 22.1-277.07 firearm offense nor a § 22.1-277.08 drug offense, the events involved no serious bodily injury, and no document records a finding that aggravating circumstances exist as defined by the Department of Education, whose definition must

account for disciplinary history that W.C.P. does not have. Verified Compl. ¶¶ 26-28, 33, 56, ECF No. 6. The Board's Policy JGD/JGE imposes the same forty-five-school-day limit and the same aggravating-circumstances predicate. Verified Compl. ¶ 57, ECF No. 6. The ninety-school-day term is twice the ceiling the statute permits on these facts. The term chosen makes the suspension void a second time.

### C. The Board adjudicated one charge and punished uncharged conduct, so the suspension violated the Fourteenth Amendment and Article I, Section 11.

The third ground is independent of the statutes and rests on two guarantees, the Fourteenth Amendment and Article I, Section 11. Virginia law makes the public schools free to each person of school age residing in the school division and commands his attendance. Va. Code Ann. §§ 22.1-3, 22.1-254 (2026); *see also* Va. Const. art. VIII, § 1. That statutory entitlement is a property interest, and the disciplinary exclusion also implicates a liberty interest in W.C.P.'s reputation and record. *Goss v. Lopez*, 419 U.S. 565, 573-76 (1975). Having extended the right to an education, the Commonwealth "may not withdraw that right on grounds of misconduct, absent fundamentally fair procedures to determine whether the misconduct has occurred." *Goss*, 419 U.S. at 574. At minimum, due process requires "oral or written notice of the charges," an explanation of the evidence, and an opportunity to present the student's side of the story, and longer suspensions "may require more formal procedures." *Id.* at 581, 584; *see also Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) (process due varies with the private interest, the risk of error, and the government's interest).

Notice of the charges means notice of the conduct actually adjudicated. *See Goss*, 419 U.S. at 581. The Board gave W.C.P. notice of one charge, a cell phone policy violation, then imposed a ninety-school-day penalty intelligible only by reference to the content of his communications,

conduct with which he was never charged and which he had no opportunity to defend. Verified Compl. ¶¶ 29-30, 41, ECF No. 6. That mismatch is a failure of notice at the core of *Goss*.

This Court has enforced the same requirements against a Virginia school board and has held that a later showing that the student committed the conduct does not excuse the failure to afford constitutionally adequate process. *Doe v. Rockingham Cnty. Sch. Bd.*, 658 F. Supp. 403, 407-08 (W.D. Va. 1987). There, the board suspended a student and declined to hear the matter until its next meeting, twenty-nine days out. This Court restrained the exclusion, held that the delayed hearing violated *Goss*, and held that later proof of the conduct could not cure the process failure. The failure here runs deeper than the delay in *Rockingham*, because the conduct that drove the penalty was never charged at all, so no hearing on it ever came.

Article I, Section 11 of the Constitution of Virginia independently guarantees the same process. Va. Const. art. I, § 11. The guarantee is self-executing, its protections are at least as strong as the federal guarantee, and a procedural due process claim under that Section proceeds against a school board. *Vlaming v. W. Point Sch. Bd.*, 895 S.E.2d 705, 743-44 (2023); *Layla H. v. Commonwealth*, 902 S.E.2d 93, 100 (Va. Ct. App. 2024); *Ibanez v. Albemarle Cnty. Sch. Bd.*, 897 S.E.2d 300 (Va. Ct. App. 2024). Virginia applies the same *Mathews* framework under Section 11. *Harvey v. Commonwealth*, 829 S.E.2d 534, 540-43 (2019).

If the Board contends that W.C.P. acknowledged the cell phone offense, the acknowledgment changes nothing. An admission narrows the process due on the charge admitted, and the only charge here is one for which the statute forbids suspension outright, while the conduct that actually drove the penalty was never charged, never admitted, and never open to defense.

Nor does the claim depend on any property interest in athletics. W.C.P. was excluded from attendance itself, the interest *Goss* protects. Verified Compl. ¶¶ 25, 33, ECF No. 6. His

extracurricular reinstatement follows from vacatur of a void suspension, not from a freestanding entitlement to play, and decisions denying relief to students suspended only from sports while they remained in class have no purchase where the student was removed from school. The constitutional ground succeeds independently of the statutes.

## II. Every Excluded School Day Is Unrecoverable, and the Senior Year Begins on August 18.

The injury here is measured in school days that cannot be relived. The academic year begins on August 18, 2026, and the Board's decision shuts W.C.P. out of his school building, his teachers, his classmates, and every extracurricular activity, including the entire fall athletic season, until December 14, 2026. Each day of in-person instruction, each practice, and each game occurs once. So does the opening of the final year of a K-12 education. No later award of damages can restore a semester of a student's senior year, and the Home Educational Services placement is not an adequate substitute for in-person instruction. Verified Compl. ¶¶ 25, 33-36, ECF No. 6. The injury is also imminent in the strict sense. It begins on the first bell of August 18, before a preliminary injunction motion can be fully briefed and heard, and that interval is the one a temporary restraining order exists to cover. That the Plaintiffs accepted the academic-continuity arrangement and the examination accommodations in good faith, and solely to preserve academic progress, is not acquiescence in the discipline that made them necessary. Verified Compl. ¶ 37, ECF No. 6.

The Supreme Court has recognized the further injury a recorded suspension inflicts. Sustained and recorded charges "could seriously damage the students' standing with their fellow pupils and their teachers as well as interfere with later opportunities for higher education and employment." *Goss*, 419 U.S. at 575. W.C.P.'s record now carries a long-term suspension that may be subject to disclosure on college applications submitted during the very semester of his

exclusion, and the suspension has already cost him a recruiting period material to collegiate athletics. Verified Compl. ¶¶ 34-35, ECF No. 6.

The governing authority treats each of these injuries as irreparable. This Court held in *Doe v. Rockingham CountySchool Board* that a suspended student would have been irreparably harmed by waiting out the school board's own timetable while excluded from school. 658 F. Supp. at 408. The Fourth Circuit has likewise held that the denial of a constitutional right, if the denial is established, constitutes irreparable harm for purposes of equitable relief. *Ross v. Meese*, 818 F.2d 1132, 1135 (4th Cir. 1987); *accord Leaders of a Beautiful Struggle v. Balt. Police Dep't*, 2 F.4th 330, 346 (4th Cir. 2021) (en banc). This Court has applied that rule, restraining license suspensions imposed without constitutionally adequate process. *Stinnie v. Holcomb*, 355 F. Supp. 3d 514, 532 (W.D. Va. 2018). For the Article I, § 11 count, the inadequacy of damages is categorical, because Virginia has traditionally recognized no damages action for a constitutional violation, and its courts treat the question as at best unresolved. *Ibanez*, 897 S.E.2d at 312 (opinion of Lorish, J.). The irreparable-injury element is satisfied.

## III. The Balance of Equities Tips in the Plaintiffs' Favor, Because the Order Requires Only That the Board Educate a Student It Already Admitted for Examinations.

An order restraining the suspension requires the Board to do only what it does for every enrolled student, educate him. A defendant is "in no way harmed by issuance of a preliminary injunction which prevents [it] from enforcing restrictions likely to be found unconstitutional." *Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184, 191 (4th Cir. 2013) (en banc) (quoting *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521 (4th Cir. 2002)). The same is true of discipline the General Assembly has forbidden. W.C.P. has no prior disciplinary record, and the Board's own conduct negates any claim that his presence poses a risk. After the hearing, the Board

admitted W.C.P. to the school building in person to sit final examinations, including four Advanced Placement examinations, and the lacrosse-game safety concern recited in the charging documents ended when the game was canceled by forfeit, and the two teams later played in the post-season without incident. Verified Compl. ¶¶ 31-33, ECF No. 6.

The suspension, by contrast, burdens both sides. It requires the Board to staff and administer off-site Home Educational Services and separate records management for a single student. And it costs W.C.P. the semester itself, because the placement is not an adequate substitute for in-person instruction in the final year of high school. Verified Compl. ¶ 36, ECF No. 6. On one side of the balance sits the administration of an ordinary enrollment. On the other sits the unrecoverable first half of a senior year. The balance-of-equities element is satisfied.

**IV. The General Assembly Has Already Declared Where the Public Interest Lies.**

The General Assembly has already declared the public interest on these facts. Every Virginia cell phone policy must "[e]xpressly prohibit any student from being suspended or expelled as a consequence of any violation of such policies," Va. Code Ann. § 22.1-79.3:1(B)(5), and no such violation "shall alone constitute sufficient cause for a student's suspension or expulsion from attendance at school pursuant to § 22.1-277." Va. Code Ann. § 22.1-79.3:1(C); *accord* Va. Code Ann. § 22.1-277(A). The statute's own object is to keep students in the learning environment by reducing distractions within it. Va. Code Ann. § 22.1-79.3:1(B)(2). A ninety-school-day removal of the student from that environment defeats the object the statute states. The General Assembly, not any school board, now sets the outer bound of discipline for cell phone violations, and an injunction that holds a school board to those limits enforces, rather than disturbs, the policy of the Commonwealth, whose Constitution commits the Commonwealth to a system of free public schools for all children of school age. Va. Const. art. VIII, § 1.

That enforcement also vindicates constitutional rights, and "upholding constitutional rights surely serves the public interest." *Giovani Carandola*, 303 F.3d at 521; *see also Centro Tepeyac*, 722 F.3d at 191. The relief requested further serves the community of E.C. Glass High School and the City of Lynchburg by returning to the classroom a student with no prior disciplinary record who alone bears the exclusion the statutes forbid. Verified Compl. ¶ 33, ECF No. 6. The public-interest element is satisfied.

## V. Security Should Be Waived or Set at a Nominal Amount.

Rule 65(c) commits the amount of security to the Court's discretion, and in appropriate circumstances a nominal bond suffices. *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 n.3 (4th Cir. 1999); *see Pashby*, 709 F.3d at 331-32. Security exists to fund "the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The moving parties are a parent and a minor child, the order requested imposes no monetary cost on the Board beyond the ordinary cost of educating an enrolled student, the order in fact relieves the Board of the expense of off-site services, and an order that returns an enrolled student to his classroom generates no damages for a bond to fund. The Plaintiffs respectfully request that security be waived or set at a nominal amount.

## VI. A Temporary Restraining Order Is Appropriate Now, With a Preliminary Injunction to Follow.

The dates alone establish the need for interim relief. The Plaintiffs filed this action on July 2, 2026, while school was out of session and no school day was at stake, and awaited a responsive pleading. The Board was served on July 14, 2026, and it answered with removal three weeks later on August 4, 2026, and then secured a ten-day extension over the Plaintiffs' objection, so its response to the Complaint is not due until August 21, 2026, three days after classes begin on August 18. ECF No. 5. Without a temporary restraining order, the irreparable injury described

above begins on the first morning of the school year and compounds daily while the Motion for a Preliminary Injunction is briefed and heard. The Plaintiffs consent to a temporary restraining order limited to fourteen days, the ceiling Fed. R. Civ. P. 65(b)(2) sets for orders issued without notice, so that the preliminary injunction can be decided on a full record while W.C.P. is spared the loss of the opening of his senior year.

The Board has full notice of this application. Counsel for the Plaintiffs advised the Board's counsel of the motion before it was filed, the Board has appeared through counsel, it has been served with the motion and this memorandum through the Court's electronic filing system, and it may respond.

The motion is ready for decision. The facts supporting it are established by the Verified Complaint and by the Motion, which is itself verified. Should the Court wish to hear from the parties before August 18, 2026, counsel for the Plaintiffs will appear at any time the Court designates, and the Plaintiffs consent to an expedited schedule on the preliminary injunction. Because the dispositive documents are few and undisputed, the Plaintiffs further consent to advancement and consolidation of the trial on the merits with the preliminary injunction hearing under Fed. R. Civ. P. 65(a)(2).

The order requested is specific and narrow, and a proposed order accompanies the motion. It states the reasons for issuance, states its terms specifically, and describes the acts restrained in reasonable detail, as Fed. R. Civ. P. 65(d)(1) requires. The Plaintiffs ask the Court to restrain the Board from enforcing the suspension and Home Educational Services placement imposed by its May 15, 2026 decision, and to direct that W.C.P. be permitted to attend E.C. Glass High School in person and to participate fully in school and extracurricular activities, as if no suspension were

in place, pending the Court's ruling on the Motion for a Preliminary Injunction, and thereafter through trial if the preliminary injunction issues.

## CONCLUSION

The suspension is void twice over, it punishes conduct never charged, and each *Winter* element is satisfied. The Plaintiffs therefore respectfully request that the Court enter a temporary restraining order restraining the Defendant from enforcing the suspension at issue so that W.C.P. may begin the 2026 to 2027 school year on time, in person, and without condition, that the Court set an expedited hearing on the Motion for a Preliminary Injunction, that a preliminary injunction issue on the same terms upon that hearing, that security be waived or set at a nominal amount, and that the Court grant such further relief as is just.

Respectfully submitted,

____/s___________________________
Elliott M. Harding, Esq. (VSB 90442)
HARDING COUNSEL, PLLC
2805 Meadow Vista Dr.
Charlottesville, VA 22901
P: 434-962-8465
E: Elliott@HardingCounsel.com
*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Memorandum in Support of Motion for Preliminary Injunction and Temporary Restraining Order was filed with the Clerk of Court this 13th day of August, 2026 and served on counsel of record for the Defendant through the Court's electronic filing system.

Respectfully submitted,

____/s___________________________

Elliott M. Harding, Esq. (VSB 90442)
HARDING COUNSEL, PLLC
2805 Meadow Vista Dr.
Charlottesville, VA 22901
P: 434-962-8465
E: Elliott@HardingCounsel.com
*Counsel for Plaintiffs*